## 12411

### MULDROW v. JEFFORDS *ET AL.*

#### (142 S. E., 602)

1. WILLS—ALLEGED WANT OF PERSONAL SERVICE ON DEVISEE IN PROCEEDINGS FOR PROOF OF WILL HELD IMMATERIAL, WHERE DEVISEE WAS NOT HEIR OF TESTATOR.—Alleged failure to have summons and petition personally served on devisee in probate proceedings to prove will *held* not to warrant setting aside of judgment disallowing will, where devisee was not an heir at law of the testator; but such defects in service were immaterial, since statute merely requires service on such persons as would be entitled to distribution of estate in case of intestacy.

2. PARTITION—ALLEGED COLLUSION BETWEEN PROPONENTS AND CONTESTANTS RESULTING IN JUDGMENT OF "NO WILL" HELD NOT TO ENTITLE DEVISEE TO QUIET TITLE TO LAND DEVISED AS AGAINST PURCHASER AT PARTITION SALE NOT PARTY TO FRAUD.—Alleged fraud and collusion between proponents of will and contestants, resulting in judgment of "no will" in probate proceedings, *held* not to warrant setting aside judgment and quieting title of devisee, where it was not shown that purchaser at partition sale of land devised was party to or affected by the fraud.

3. COURTS—JURISDICTION GIVEN COURT OF PROBATE IS NOT NECESSARILY EXCLUSIVE OF JURISDICTION OF COURTS OF COMMON PLEAS (CONST., ART. 5, §§ 15, 19).—Jurisdiction of Court of Probate in all matters testamentary, of administration, and in business appertaining to minors, and allotment of dower, and insanity, does not necessarily exclude jurisdiction of Courts of Common Pleas, under Const., Art. 5, §§ 15, 19, which gives Common Pleas Courts jurisdiction in all civil cases.

4. Wills—Statute Providing for Review of Issue of "Will or No Will" Contemplates Trial De Novo, and Practically Confers Jurisdiction on Court of Common Pleas (Civ. Code 1922, § 5351; Code Civ. Proc., 1922, § 187; Const., Art. 5, §§ 15, 19).—Appellate jurisdiction of Court of Common Pleas in determining issue of "will or no will," under Civ..Code 1922, § 5351, and Code Civ. Proc. 1922, § 187, contemplates trial *de novo,* and practically confers jurisdiction of issue of "will or no will" upon Court of Common Pleas, in view of Const., Art. 5, §§ 15, 19.

5. Wills—Court of Common Pleas Held to Have Jurisdiction of Issue of "Will or No Will" Presented Upon Stipulation Waiving Trial Before Probate Judge (Civ. Code, 1922, § 5351; Const., Art. 5, §§ 15, 19).—Where proponents and opponents of will agreed to waive trial before Probate Judge and carry case upon his certificate to Court of Common Pleas, Court of Common Pleas had jurisdiction of issue of "will or no will," under Civ. Code 1922, § 5351, and Const., Art. 5, §§ 15, 19, since stipulation was either equivalent to an appeal or amounted to a submission of the issue by agreement to a Court having jurisdiction, preventing complaint on ground of lack of process.

6. Process—Parties Waiving Trial in Probate Court and Submitting Issue to Court of Common Pleas Could Not Attack Jurisdiction for Lack of Process (Const., Art. 5, §§ 15, 19; Civ. Code 1922, § 5351).—Parties who entered into stipulation waiving trial before Probate Judge and submitted issues by agreement to Court of Common Pleas, which had jurisdiction of subject-matter under Const., Art. 5, §§ 15, 19, and Civ. Code 1922, § 5351, could not complain by reason of lack of process.

7. Judicial Sales—Judicial Sales Should Not be Invalidated Without Compelling Considerations.—Sales made under orders of the Court should not be set aside without the most compelling considerations.

Before Dennis, J., Florence, February, 1925.    Affirmed.

Action by Robert J. Muldrow against Marion Lee Jeffords and others.    Decree for defendants, and plaintiff appeals.

*Mr. D. E. Ellerbe,* for appellant, cites: *Jurisdiction of Court of Common Pleas:* Sec. 15, Art. 5, Const. 1895. *Jurisdiction of all matters testamentary in Probate Court:* Secs. 166, 168, Code Proc. *Proof of will:* Sec. 5351, Code. *Appeal to Court of Common Pleas:* Secs. 187, 188, Code Proc., Sec. 5, Art. 6, Const. 1895. *Providing for co-*

dification of general statutes repealed all statutes not in-
cluded in Code: 96 S. C., 313. *Act of 1839 for proof of
will provided for de novo trial in Common Pleas Court:*
16 S. C., 45; 8 Rich. Eq., 90; 12 Rich. Eq., 203. *Jurisdic-
tion of Common Pleas Court in proof of will:* 35 S. C.,
417; 67 S. C., 55; 74 S. C., 189; 86 S. C., 470; 93 S. C.,
268; 113 S. C., 270; 125 S. E., 293. *Consent cannot confer
jurisdiction:* 25 S. C., 386; 22 S. C., 276; 24 S. C., 392;
53 S. C., 121; 53 S. C., 198; 86 S. C., 484. *"Subject mat-
ter":* 37 Cyc., 342. *Jurisdiction of infant, how obtained:*
Secs. 164, 184, Code Proc., 1912; 17 S. C., 435; 23 S. C.,
154; Id., 187; 24 S. C., 373; 25 S. C., 275; 31 S. C., 576;
40 S. C., 69. *Guardian ad litem:* 22 Cyc., 663. *If the
two Courts have concurrent jurisdiction, the probate having
obtained it, becomes vested therewith to the total exclusion
of the Court of Common Pleas:* 83 S. C., 157; 25 S. C.,
204; 10 S. C., 431. *Where facts were known to purchaser
sufficient to put him on inquiry as to fraud, he is not pro-
tected:* 83 S. C., 339. *Purchaser bound at his peril to see
that the Court had jurisdiction of the subject matter, and
that the proper parties were before the Court:* 40 S. C.,
77; 29 S. C., 327; 36 S. C., 36; 17 S. C., 435; 23 S. C., 155;
Id., 187; 24 S. C., 376. *"Laches":* 106 S. C., 313; 21 C.
J., 210; 10 R. C. L., 153; 43 S. C., 442; 90 S. C., 103.
*When jurisdiction of subject-matter conferred upon a
Court, the power to bring before it all necessary and proper
parties for the determination of the same follows as an in-
cident to the jurisdiction:* 86 S. C., 477. *"Direct attack
upon judgment":* Am. Ann. Cas., 1914-B, 82; 15 R. C. L.,
182; 34 S. C., 452; 90 S. C., 552.

*Messrs. Wilcox & Hardee,* for respondents, cite: *Juris-
diction of Probate Court:* Art. 5, Secs. 1, 18, 19, Const.
1895; 111 S. C., 205. *Court of Common Pleas:* Sec. 15,
Art. 5, Const. 1895; 83 S. C., 157. *Probate Court:* Sec.
163, 164, 166, 168, 179, Code Proc.; 44 S. C., 44. *Appel-
late jurisdiction of Circuit Court:* Secs. 185, 188, 190, 194,

Code Proc.; 67 S. C., 55; 72 S. C., 388; 75 S. C., 368. *Proof of wills:* Secs. 5349, 5351, 5353 Code. *Jurisdiction of Probate Court concurrent with jurisdiction of Court of Common Pleas:* 17 S. C., 323; 130 S. E., 212. *Immaterial procedural errors disregarded:* Sec. 832, Code Proc. *Right to jury trial of a will case may be waived:* 113 S. C., 270. *On appeal from Probate Court all issues of fact involved must be determined de novo by Circuit Court:* 67 S. C., 55; 75 S. C., 368; 86 S. C., 470; 12 Rich. Eq., 203; 74 S. C., 189; 83 S. C., 157; 33 S. C., 442. *Jurisdiction of the person:* N. & McC. Rep., 326; 123 S. C., 252; 19 S. C., 385; 20 S. C., 347. *Judgment of a Court of record cannot be attacked collaterally in another proceeding:* 90 S. C., 552; 5 S. C., 5; 24 S. C., 398. *Distinguished:* 17 S. C., 438. *Valid judgment:* 19 S. C., 498; 34 S. C., 452; 14 How., 584; 126 S. C., 207. *Rights of subsequent purchaser for value:* 83 S. C., 329. *Pleading setting up fraud or misrepresentations must allege facts relied on to show it and knowledge thereof in the opposite party:* 119 S. C., 190; 58 S. C., 56. *When cause of action for fraud arises:* Secs. 331, 342, Code Proc.; 26 S. C., 237. *Guardian ad litem:* 71 S. C., 17; 61 S. C., 569.

March 23, 1928.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

A reconsideration of this case upon a rehearing has convinced the Court that the conclusion reached in the first opinion is erroneous, and that instead of being reversed the decree should be affirmed.

This is an action commenced July 16, 1924, for the purpose of having it adjudicated that a judgment of the Court of Common Pleas for Florence County, entered upon a verdict rendered in May, 1914, declaring that the will of Robert J. Muldrow, Sr., which had been proved in common form in the Court of Probate, was "no will," is null and void, for

want of jurisdiction in the Court of Common Pleas to so determine, and for fraud in the proceedings eventuating in said verdict and judgment.

The plaintiff, Robert J. Muldrow, Jr., a grandson of the alleged testator, claims to be a devisee of the land in question, under said will, and prays that the proceeding referred to be set aside as a cloud upon his title.

The defendants are the heirs at law of Mrs. Annie G. Muldrow (the widow of the testator), to whom the property in question was allotted in the division of the property of Robert J. Muldrow, Sr., as an intestate estate, S. T. Burch, the purchaser of the property in question at a sale for partition of the property of Annie G. Muldrow, deceased, and M. M. Brown and L. A. McCall, against whom the defendant Burch makes certain claims.

It thus appears that the regularity of the immediate proceeding under which Burch acquired his title (the partition proceeding, in which the estate of Annie G. Muldrow, deceased, was divided) is not in question; the attack is upon the title of Annie G. Muldrow, from whom Burch claims, by reason of the alleged nullity of the judgment declaring, upon proof in solemn form of the will of Robert J. Muldrow, Sr., that it was "no will."

Robert J. Muldrow, Sr., died on April 2, 1911, leaving a will dated March 30, 1911, in which he devised to his grandson, the plaintiff, the remainder in fee, after a life estate to another, in the real estate described in the complaint. On April 17, 1911, J. A. Muldrow, his son, and Marion Lee Jeffords, his daughter, who were named executor and executrix of the will, presented the will for probate to the Judge of Probate of Florence County, and it was duly admitted to probate in common form on that day. The personal representatives qualified, and proceeded with the execution of the will and the administration of the estate. On November 29, 1911, certain of the heirs at law of Robert J. Muldrow, Sr., interested in invalidating the will, gave notice

to the Judge of Probate requiring it to be proved in due form of law. Thereupon the Judge of Probate issued a summons addressed to all of the heirs at law of Robert J. Muldrow, Sr., "such persons as would have been entitled to distribution of the estate if the deceased had died intestate," requiring them to answer the petition. The summons upon this petition did not include the plaintiff, Robert J. Muldrow, Jr., evidently for the reason that he was interested only as a devisee; his father, J. Archie Muldrow, who was a son of the testator, was then alive, and the plaintiff could not have been an heir at law, one of the class to whom only the statute requires the extension of notice of such proceeding.

Upon the day fixed for hearing proof before the Judge of Probate, upon the issue of admitting the will to probate in due form of law, the attorneys on both sides agreed to waive further proceedings in the Probate Court, and, quoting from the agreed "case":

"Thereupon it was agreed between counsel for the said contestants and counsel for the said proponents of the will that the issue of 'will or no will' be submitted to the Court of Common Pleas for Florence County."

The Judge of Probate then signed an order, consented to by Walter H. Wells, Esq., attorney for the contestants, and W. F. Clayton, Esq., attorney for the proponents:

"That the issue of 'will or no will' be and same is hereby certified to the Court of Common Pleas for Florence County for its decision, and that the formalities required by Rule 28 of the Circuit Court be considered waived."

It is not so stated in the record, but we assume that the Probate Judge made a certificate to the Court of Common Pleas, upon which the issue was presented to that Court. At any rate, the matter came up for trial before his Honor, Judge Rice, and a jury, at the Spring Term, 1913, of said Court. At this trial a most remarkable situation arose. As his Honor, Judge Rice, states in his order of July 7, 1913:

"At the trial of the proponents of the will (the personal representatives) were represented by Mr. W. F. Clayton and Mr. Henry Buck, and after a good deal of evidence was in, *all tending to sustain the will,* the Court was asked to allow the parties and their attorneys a few minutes in which to consult, as they wished to settle the matter without further contest.   On returning to the courtroom, Messrs. Buck and Clayton stated that their clients desired to *discontinue their opposition to setting aside the will,* and asked that the Court allow them to withdraw from the case, which request was granted in a formal order.   Thereupon Mr. Philip H. Arrowsmith, a young attorney, was requested by the proponents of the will to represent them formally, which he did, *but, in accordance with the wishes of the proponents of the will, made no effort to establish the will."*

Testimony was offered by the contestants against the validity of the will.   The case was submitted to the jury, apparently without argument, and a verdict of "no will" was rendered.   Thereafter, as his Honor states, at his suggestion, the executor made a motion for a new trial, and, after considering it, his Honor filed an order dated July 7, 1913, granting a new trial, upon the ground that the circumstances above detailed convinced him that there had not been a fair trial of the issue.   He explained the remarkable conduct of the executor in this way: "It is due the executor, who as stated, is the son of testator, to state that I was impressed with his evident willingness and anxiety to do his full duty as executor, and appeared to cease his efforts to sustain the will only after pressure was brought to bear on him by his mother, the wife of the testator (who, we interpolate, would receive much more as an heir at law of the estate, intestate, than as a devisee under the will), and other members of his father's immediate family," regardless of the interests of his own son, the plaintiff, and other remaindermen under the will.   His Honor, Judge Rice, further took the position that the proponents of the will did

not represent the interest of the remaindermen, and directed by his order that they be made parties to the proceeding.

Accordingly, the original summons and petition were amended by adding the remaindermen, including the plaintiff, as respondents. The amended summons and petition were entitled, as the originals were, "In the Court of Probate"; the summons being signed "H. A. Brunson, Probate Judge, Florence County," and dated October 1, 1913.

There is some question whether the summons directed to be served upon the plaintiff, Robert J. Muldrow, Jr., by the order of his Honor, Judge Rice, was properly entitled and signed, and whether, as a fact, it was served upon him. As the statute does not require the summons in such a case to be served upon *devisees* under the will, but only upon "such persons as would have been entitled to distribution of the estate, if the deceased had died intestate," these questions are immaterial.

. At the April term, 1914, of the Court of Common Pleas, the case came up for trial before his Honor, Special Judge Ramage. A day or two before the trial commenced, upon the application of certain parties connected with the case, his Honor, Judge Ramage, on April 30, 1914, signed an order appointing C. J. Gasque, Esq., guardian *ad litem* for the infant defendants, remaindermen, who had been included among the respondents to the petition under the order of his Honor, Judge Rice. Mr. Gasque filed a formal answer for the remaindermen, including the plaintiff, and the trial proceeded. Mr. Arrowsmith, representing the proponents of the will, did not take an active part in establishing the will, "as it was evident that the family had decided not to fight the case further." (Judge Dennis' decree.) Mr. Gasque, however, did take an active part, representing the remaindermen, and apparently produced all available witnesses to establish the will. The contestants produced witnesses to establish the testamentary incapacity of the testator, and the case was submitted to the jury. The result was as before,

a verdict of "no will." It does not appear that a motion for a new trial was made or an appeal taken. Consequent upon the verdict of "no will," a judgment roll was made up and filed.

Thereupon the heirs of Robert J. Muldrow, Sr., proceeded to subdivide all of the real estate of which he died seized and possessed, as if there had been no will; and the land in question in this action was conveyed by all of the other heirs of the deceased to the widow, Annie G. Muldrow. This conveyance was executed in 1914, and she continued in possession until her death, at some time, not stated in the record, prior to December, 1923.

After the death of Annie G. Muldrow, the widow, her heirs at law instituted an action for the partition of her real estate, including that involved in the present action, which resulted in a decree of sale for partition, dated December 19, 1923; at the sale the defendant S. T. Burch purchased the property now involved, at a fair price, we assume.

The plaintiff, who was born June 12, 1900, and who was less than 14 years old when the judgment of "no will" was entered upon the verdict rendered before Judge Ramage, in May, 1914, has instituted this action to have the Court adjudicate that that judgment is void. The action was commenced, as already stated, on July 16, 1924.

The complaint contains a detailed statement of the facts hereinbefore, in substance, set forth. The plaintiff relies upon three grounds :

(1) That the summons and petition were not served personally upon him.

(2) That the verdict and judgment were obtained by fraud and collusion between the proponents and contestants of the will.

(3) That the Court of Common Pleas which rendered the judgment of "no will" was without jurisdiction to entertain the issue of "will or no will," except upon appeal from the Probate Court.

By an order of his Honor, Judge Shipp, dated September 13, 1924, it was referred to the Master of Florence County to take the testimony and report the same. On September 19, 1924, the testimony was taken, and on the 24th it was filed with the Clerk of Court. The case was heard by his Honor, Judge Dennis, in the fall of 1924, and on February 23, 1925, he filed a decree, overruling all of the grounds taken by the plaintiff, and dismissing the complaint. From that decree the plaintiff has appealed.

For the reason stated above the first ground of contention, that the summons and petition were not personally served upon the plaintiff, may be dismissed without further notice.

As to the second ground, that the verdict and judgment of "no will" were obtained by fraud and collusion between the proponents of the will and the contestants, there is no evidence tending to show that Burch, the purchaser at the partition sale ten years later, was a party thereto or affected thereby.

The most serious question is the third ground, that the Court of Common Pleas which rendered the judgment of "no will" was without jurisdiction to entertain the issue of "will or no will," except upon appeal from the Probate Court. This theory is based upon the assumption that under the Constitution and statutes of this State, the Court of Probate has exclusive jurisdiction in the matter of the proof of wills, both in common and in due form of law. The first inquiry therefore must be directed to the correctness of this assumption.

There can be no question of the fact that under the Constitution, the Court of Probate *has jurisdiction* "in all matters testamentary and of administration, in business appertaining to minors and the allotment of dower, in cases of idiocy and lunacy and persons *non compos mentis."* It does not necessarily follow that the jurisdiction is *exclusive,* and that the Court of Common Pleas, the Court of Universal Jurisdiction (except when

specifically limited), has not jurisdiction in any of such matters. As the Constitution provides, in reference to Courts of Common Pleas: "They shall have jurisdiction in all civil cases." Article 5, § 15.

The case of *Jordan v. Moses,* 10 S. C., 431, was instituted in 1877, while the Constitution of 1868 was in force. It was a proceeding instituted in the Probate Court by creditors for an accounting by the executors, and a sale of the real estate of the testator to pay debts. The defendants pleaded the pendency of another action in the Court of Common Pleas by another creditor, against the executors, legatees, and devisees, for account, injunction, and to marshal assets. The Supreme Court sustained the plea of another action pending, over the objection of the defendants that the Probate Court had exclusive jurisdiction of the matter, saying:

"If it can be made to appear that the Court of Common pleas had jurisdiction of * * * [the earlier case], * * * it is very manifest that the judgment below [sustaining the plea] must be sustained."

Considering this question, the Court said:

"The Court of Common Pleas is invested by the Constitution [of 1868], Article 4, § 16, with 'jurisdiction in all matters of equity,' and no one will deny that the object of the action brought by Crane, Boylston & Co. [the earlier action] was one of which the Court of Equity, at the time of the adoption of the Constitution of 1868, had cognizance. The fact that jurisdiction of such an action may also have been given to the Court of Probate does not oust the jurisdiction of the Court of Common Pleas under the principles established in the recent case of *Walker v. Russell* [10 S. C., 82] manuscript decision, filed April 23, 1878."

The Court might well also have called attention to the provisions of Article 4, § 15. "The Courts of Common Pleas shall have * * * *exclusive original jurisdiction in all civil cases*"—which however, taken in connection with

Section 20, presented a case of concurrent jurisdiction with the Probate Court, in matters therein confided to it.

In the case of *Walker v. Russell,* 10 S. C., 82, the case to which reference is made in *Jordan v. Moses,* 10 S. C., 431, and upon the authority of which the latter case was decided, the plaintiff had been adjudged a lunatic in a proceeding instituted in the Probate Court; he then brought an action in the Court of Common Pleas against the committee appointed in the proceeding in the Probate Court, for leave to traverse the inquisition of lunacy and for an injunction against the threatened action of the committee in mortgaging his land. The defendant demurred to the complaint upon the ground, among others, that the Court of Common Pleas had no jurisdiction of the matters, they being exclusively within the jurisdiction of the Probate Court. This Court dismissed the demurrer, saying:

"There is no doubt, however, but that the Court of Common Pleas is a Court of General Jurisdiction in civil cases, while the Court of Probate is one of limited and inferior jurisdiction. Hence, according to a well-established rule of law, those who undertake to deprive the former of jurisdiction in any given case and give it to the latter must be able to point out some particular provision of the Constitution which either expressly or by necessary implication gives jurisdiction of such case to the limited and inferior tribunal to the exclusion of the superior tribunal. There is no pretense that there is any clause in the Constitution which, in *express* terms, gives the Probate Court *exclusive* jurisdiction 'in cases of idiocy and lunacy and persons *non compos mentis.'* Section 20 of Article 4 does give that Court jurisdiction in such cases, but not exclusive jurisdiction."

Further, the Court said:

"The necessary inference would seem to be that while the Court of General Jurisdiction—the Court of Common Pleas—was to have unlimited jurisdiction of *all* matters which were formerly cognizable by the Court of Equity, which

was then abolished [jurisdiction in all civil cases, under the Constitution of 1895, we interpolate], the Court of inferior and limited jurisdiction—the Court of Probate—was to have concurrent jurisdiction in *some* of those matters, to wit, those which were particularly specified in the Section 20 conferring such jurisdiction.   Any other view would involve a palpable inconsistency between these two sections of the Constitution, which must, of course, if possible, be avoided."

In the case of *Witte v. Clarke,* 17 S. C., 313, the plaintiffs instituted an action of foreclosure of a mortgage upon certain real estate.   Pending the action, the widow of the mortgagor prosecuted proceedings for dower in the Probate Court and had it concluded.   The plaintiffs filed a supplemental complaint alleging the dower proceedings and asked that they be enjoined and that the matter of dower be adjudicated in the foreclosure proceedings.   The demandant in dower contended that the Probate Court had exclusive jurisdiction of the matter of dower.   This Court held that the Court of Common Pleas had obtained jurisdiction over the subject-matter of the controversy, Green Hill plantation, before any proceedings were instituted in the Probate Court for dower, and had the prior right to adjudicate the controversy as to it, saying:

"It is very true that the Court of Probate has jurisdiction in cases of dower, but its jurisdiction is not exclusive, for the Court of Common Pleas has concurrent jurisdiction in such cases.   This is the necessary result of the principles announced in the case of *Walker v. Russell,* 10 S. C., 82."

In *Fogle v. St. Michael Church,* 48 S. C., 86; 26 S. E., 99, considering what is now Section 5414, Vol. 3, Code 1922, relating to the sale of real estate in  aid of the assets of a decedent's estate, the Court said:

"It is true, this section provides that proceedings thereunder may be instituted in the Probate Court, but as the Court of Common Pleas would have concurrent jurisdiction in such cases, the provisions of said section are also appli-

cable to the Court of Common Pleas"—citing *Jordan v. Moses*, 10 S. C., 431.

In *State v. Glenn*, 14 S. C., 118, the Court said:

"There is no recognized principle by which a grant to an inferior out of the jurisdiction previously exercised by a Court of general original jurisdiction can operate as an exclusion of such Superior Courts unless made so by the terms of the grant."

In *Chapman v. Smith*, 133 S. C., 122; 130 S. E., 212, it is said:

"Probate Court has not exclusive jurisdiction in settling estates. * * * Action on guardian's bond against personal representatives of surety held within jurisdiction of Court of Common Pleas."

We thus see that in "matters of administration," calling executors or administrators to account, selling real estate in aid of personal assets to pay debts, the Court of Common Pleas has concurrent jurisdiction with the Probate Court; likewise in business appertaining to minors, the allotment of dower, cases of idiocy and lunacy and persons *non compos mentis*. The only class of cases referred to in Article 5, § 19, conferring jurisdiction upon Probate Courts, as to which there appears to have been no explicit judicial utterance, is matters testamentary. In case after case, the Court of Common Pleas has assumed jurisdiction to enforce performance of a contract to make a will. It appears illogical to hold that of all the enumerated classes of cases *except one* the Court of Common Pleas has concurrent jurisdiction.

We think that beyond these considerations, Section 5351, Vol. 3, Code, 1922, practically confers jurisdiction of the issue of "will or no will" upon the Court of Common Pleas. While, as stated in the case of *Myers v. O'Hanlon*, 12 Rich. Eq., 196, *"In legal construction, the Court of Common Pleas has but appellate jurisdiction in such cases,"* that expression must refer to the course of procedure outlined in Section 5351. But as there out-

lined, it has not a single element of *an appeal;* it contemplates a trial *de novo* in the Common Pleas Court. Controversies as to the rulings of the Probate Judge upon the admission of evidence, preponderance of the evidence, or matters of law or procedure, vanish from the case. There are no exceptions or assignments of error to be considered. The case is transferred to the Court of Common Pleas *for trial* upon the simple act of giving notice of appeal. It is significant that in this connection no reference is made to an appeal. The right of review is secured by the general provision in Section 187 of Code Civ. Proc.

In *Peeples v. Smith,* 8 Rich., 90, it is declared that in the Court of Common Pleas "the case should be tried *anew.* That is, as I understand, it is tried *as a new case."*

In *Prater v. Whittle,* 16 S. C., 40, the Court said:

"The relation of the Probate Judge to the case was in no way analogous to that of a referee appointed to hear and determine issues referred. Upon appeal from the Probate Court on a question of will or no will, issues of fact are tried *de novo* in the Circuit Court."

In the case of *In re Solomon's Estate,* 74 S. C., 192; 54 S. E., 208, the Court said:

"Under the Act of 1839, * * * the Court of Ordinary had jurisdiction of the probate of wills; and the appeal from the Ordinary was not to the Court of Equity but to the Court of Common Pleas, where all questions of law and fact *were tried anew* with or without a jury."

The case of *Myers v. O'Hanlon,* 12 Rich. Eq., 196, contains an exceedingly significant statement:

" By the thirteenth section of the Act of 1839, * * * appeals from the sentence or decree of the ordinary relative to any will or testament are directed to be made to the Court of Common Pleas, and it is expressly enacted that all issues arising out of them 'shall be tried according to the usage and practice of that Court.' Upon the trial of such issues the same rules of evidence, mode of examination, and forms of

procedure, are observed as on the trial of original causes in that Court. In truth, the validity of contested wills is tried and determined practically in the Court of Common Pleas. The primary decree of the Ordinary in such controversies is regarded by the parties as comparatively immaterial. It is upon the appeal to the law Courts that the actual contest, the substantial trial, really occurs. In legal construction, the Court of Common Pleas has but appellate jurisdiction in such cases. But by the express provision of the Act of 1839, if an issue of fact is involved, the cause is to be tried anew, as though it were an original cause in that Court, and the parties are at liberty to raise new questions, never considered by the Ordinary, or even made before him."

If the attorneys in the case before the Probate Court made a mistake, which we do not think, it was manifestly due to the foregoing observation. In view of it, the conclusion was natural; here is a contested will case; however it goes there will be an appeal; why the unnecessary tedium of a trial in the Probate Court when it will all be gone over in the Court of Common Pleas?

They agreed to waive the trial before the Probate Judge and to carry the case upon his certificate to the Court of Common Pleas, and we think that this stipulation entered into by the attorneys representing all parties who were entitled to be heard in that proceeding, should be recognized as equivalent to an appeal from the Probate Court. If not equivalent to an appeal, it amounted to a submission of the issue by agreement to a Court having unquestioned jurisdiction of the subject-matter, to which the parties agreeing had no right to complain by reason of the lack of process, the purpose of which is simply to get the parties before the Court.

It seems to the Court that it would be a reproach upon the administration of justice to hold that, where both sides of a controversy were represented by reputable attorneys, and agreed to a course of procedure by

which a perfectly immaterial step in a proceeding was agreed to be omitted, and the case by a short cut carried to the tribunal which unquestionably would have had jurisdiction if the immaterial step had been taken, persons who paid their money upon the faith of the adjudication had, should lose, without fault on their part. Great confidence is naturally placed by the people at large in sales made under the orders of the Court, and that confidence should not be shaken without the most compelling considerations. See *Bush v. Aldrich*, 110 S. C., 491; 96 S. E., 922. *Beall Co. v. Weston*, 83 S. C., 491; 65 S. E., 823.

The judgment of this Court is that the decree of his Honor, Judge Dennis, be affirmed.

Messrs. Justices Cothran and Carter concur.

Messrs. Justices Blease and Stabler dissent.

Mr. Justice Blease (dissenting): When this cause was first heard in this Court, Mr. Justice Stabler and I concurred in the opinion of Mr. Justice Cothran reversing the judgment below. My views are still in accord with that opinion, and I adopt it as my dissenting opinion from the judgment now proposed to be entered.

This is an action commenced July 16, 1924, for the purpose of having it adjudicated that a judgment of the Court of Common Pleas for Florence County, entered upon a verdict rendered in May, 1914, declaring that the will of Robert J. Muldrow, Sr., which had been proved in common form in the Court of Probate, was "no will," is null and void, for want of jurisdiction in the Court of Common Pleas to so determine, and for fraud in the proceedings eventuating in said verdict and judgment.

The plaintiff, Robert J. Muldrow, Jr., a grandson of the alleged testator, claims to be a devisee of the land in question, under said will, and prays that the proceeding referred to be set aside as a cloud upon his title.

The defendants are the heirs at law of Mrs. Annie G. Muldrow, the widow of the testator, to whom the property

in question was allotted in the division of the property of
Robert J. Muldrow, Sr., as an intestate estate, S. T. Burch,
the purchaser of the property in question at a sale for parti-
tion of the property of Annie G. Muldrow, deceased, and
M. M. Brown and L. A. McCall, against whom the defend-
ant Burch makes certain claims.

It thus appears that the regularity of the immediate pro-
ceeding under which Burch acquired his title, the partition
proceeding, in which the estate of Annie G. Muldrow, de-
ceased, was divided, is not in question; the attack is upon the
title of Annie G. Muldrow, from whom Burch claims, by
reason of the alleged nullity of the judgment declaring, upon
proof in solemn form of the will of Robert J. Muldrow, Sr.,
that it was "no will."

Robert J. Muldrow, Sr., died on April 2, 1911, leaving a
will dated March 30, 1911, in which he devised to his grand-
son, the plaintiff, the remainder in fee after a life estate to
another, in the real estate described in the complaint.   On
April 17, 1911, J. A. Muldrow, his son, and Marion Lee
Jeffords, his daughter, who were named executor and ex-
ecutrix of the will, presented the will for probate to the
Judge of Probate of Florence County, and it was duly ad-
mitted to probate in common form on that day.   The per-
sonal representatives qualified and proceeded with the execu-
tion of the will and the administration of the estate.   On
November 29, 1911, certain of the heirs at law of Robert J.
Muldrow, Sr., interested in invalidating the will, gave notice
to the Judge of Probate requiring it to be proved in due
form of law.   Thereupon the Judge of Probate issued a
summons addressed to all of the heirs at law of Robert J.
Muldrow, Sr., "such persons as would have been entitled to
distribution of the estate, if the deceased had died intestate,"
requiring them to answer the petition.   This summons did
not include the plaintiff, Robert J. Muldrow, Jr., evidently
for the reason that he was interested only as a devisee, and

not as an heir at law, his father, J. Archie Muldrow, son of the deceased, being alive.

Upon the day fixed for hearing proof before the Judge of Probate upon the issue of admitting the will to probate in due form of law (the date does not appear in the record for appeal), the counsel for the contestants announced that for the purposes of an order which had been agreed upon between the attorneys for the respective sides, the contestants *would waive proof in due form* in the Probate Court. "Thereupon it was agreed between counsel for the said contestants and counsel for the said proponents of the will that the issue of 'will or no will' be submitted to the Court of Common Pleas for Florence County." The Judge of Probate then signed an order, consented to by Walter H. Wells, Esq., attorney for the contestants, and W. F. Clayton, Esq., attorney for the proponents:

"That the issue of 'will or no will' be and the same is hereby certified to the Court of Common Pleas for Florence County for its decision, and that the formalities required by Rule 28 of the Circuit Court be considered waived."

The order, as it appears in the record for appeal, is without date, but it manifestly was signed at some time prior to the Spring Term, 1913, of the Court of Common Pleas for Florence County.

It is not so stated in the record, but we assume that the Probate Judge made some sort of a certificate to the Court of Common Pleas, the platter upon which the issue was presented to that Court. At any rate, the matter came up for trial before his Honor, Judge Rice, and a jury, at the Spring Term, 1913, of said Court. At this trial a most remarkable situation arose: As his Honor, Judge Rice, states in his order of July 7, 1913:

"At the trial the proponents of the will (the personal representatives), were represented by Mr. W. F. Clayton and Mr. Henry Buck, and after a good deal of evidence was in, *all tending to sustain the will,* the Court was asked to allow

the parties and their attorneys a few minutes in which to consult, as they wished to settle the matter without further contest. On returning to the courtroom, Messrs. Buck and Clayton stated that their clients desired *to discontinue their opposition to setting aside the will,* and asked that the Court allow them to withdraw from the case, which request was granted in a formal order. Thereupon Mr. Philip H. Arrowsmith, a young attorney, was requested by the proponents of the will to represent them formally, which he did, *but, in accordance with the wishes of the proponents of the will, made no effort to establish the will."*

Testimony was offered by ·the contestants against the validity of the will. The case was submitted to the jury, apparently without argument, and a verdict of "no will" was rendered. Thereafter, as his Honor states, at his suggestion, the executor made a motion for a new trial, and, after considering it, his Honor filed an order dated July 7, 1913, granting a new trial, upon the ground that the circumstances above detailed convinced him that there had not been a fair trial of the issue. He explained the remarkable conduct of the executor in this way: "It is due the executor, who as stated, is the son of testator, to state that I was impressed with his evident willingness and anxiety to do his full duty as executor, and appeared to cease his efforts to sustain the will only after pressure was brought to bear on him by his mother, the wife of the testator (who, we interpolate, would receive much more as an heir at law of the estate, intestate, than as a devisee under the will), and other members of his father's immediate family"—regardless of the interests of his own son, the plaintiff, and other remaindermen under the will. His Honor, Judge Rice, further took the position that the proponents of the will did not represent the interests of the remaindermen, and directed by his order that they be made parties to the proceeding.

Accordingly, the original summons and petition were amended by adding the remaindermen, including the plain-

tiff, as respondents. The amended summons and petition were entitled as the originals were, "In the Court of Probate"; the summons being signed "H. A. Brunson, Probate Judge, Florence County," and dated October 1, 1913.

There is some question whether the summons and petition were personally served upon the plaintiff herein, Robert J. Muldrow; but from the view which we take of the case, we do not think it necessary to go into that question, for the reason that our conclusion that the Court of Common Pleas was without jurisdiction to entertain the proceeding, precludes the necessity of considering any other question.

At the April term, 1914, of the Court of Common Pleas, the case came up for trial before his Honor, Special Judge Ramage. A day or two before the trial commenced, upon the application of certain parties connected with the case, his Honor, Judge Ramage, on April 30, 1914, signed an order appointing C. J. Gasque, Esq., guardian *ad litem* for the infant defendants, remaindermen, who had been included among the respondents to the petition under the order of his Honor, Judge Rice. Mr. Gasque filed a formal answer for the remaindermen, including the plaintiff, and the trial proceeded. Mr. Arrowsmith, representing the proponents of the will, did not take an active part in establishing the will, "as it was evident that the family had decided not to fight the case further." (Judge Dennis' decree.) Mr. Gasque, however, did take an active part, representing the remaindermen, and apparently produced all available witnesses to establish the will. The contestants produced witnesses to establish the testamentary incapacity of the testator, and the case was submitted to the jury, apparently without argument. The result was as before—a verdict of "no will." It does not appear that a motion for a new trial was made or an appeal taken.

Consequent upon the verdict of "no will," a judgment roll was made up and filed.

Thereupon the heirs of Robert J. Muldrow, Sr., proceeded to subdivide all of the real estate of which he died seized and possessed, as if there had been no will; and the land in question in this action was conveyed by all of the other heirs of the deceased to the widow, Annie G. Muldrow. This conveyance was executed in 1914, and she continued in possession until her death, at some time, not stated in the record, prior to December, 1923.

After the death of Annie G. Muldrow, the widow, her heirs at law instituted an action for the partition of her real estate, including that involved in the present action, which resulted in a decree of sale for partition, dated December 19, 1923, at which sale the defendant S. T. Burch purchased the property now involved, at a fair price, we assume.

The plaintiff, who was born June 12, 1900, and who was less than 14 years old when the judgment of "no will" was entered upon the verdict rendered before Judge Ramage, in May, 1914, has instituted this action to have the Court adjudicate that that judgment is void. The action was commenced, as already stated, on July 16, 1924.

The complaint contains a detailed statement of the facts hereinbefore in substance, set forth. The plaintiff relies upon three grounds:

(1) That the summons and petition were not served personally upon him.

(2) That the verdict and judgment were obtained by fraud and collusion between the proponents and contestants of the will.

(3) That the Court of Common Pleas which rendered the judgment of "no will" was without jurisdiction to entertain the issue of "will or no will," except upon appeal from the Probate Court.

It appears from the record before us that only the defendant Burch served an answer to the complaint. He set up various defenses, none of which affect the conclusion which this Court has reached upon the single point in the case, that

the Court of Common Pleas did not have jurisdiction to entertain the issue of "will or no will."

By an order of his Honor, Judge Shipp, dated September 13, 1924, it was referred to the Master of Florence County to take the testimony and report the same. On September 19, 1924, the testimony was taken, and on the 24th it was filed with the Clerk of Court. The case was heard by his Honor, Judge Dennis, in the fall of 1924, and on February 23, 1925, he filed a decree overruling all of the grounds taken by the plaintiff and dismissing the complaint. From that decree the plaintiff has appealed.

We may pass by the first and second grounds above stated, upon which the plaintiff relies to vacate the judgment of May, 1914, for the reason that our conclusion as to the third renders a consideration of them unnecessary.

The vital question in the case is that raised by the third ground, above stated.

It will be noted that the will was first probated by the Judge of Probate in common form. Under the statute, 3 Code, 1922, § 5351, Subd. 2, such probate "shall be good," unless some one interested in invalidating the paper as a will gives notice to the Probate Judge, within four years after the probate, that he requires the will to be proved in due form of law. The statute then defines what shall be "due form of law" thus:

"The *Judge of Probate* shall require the party producing the will for probate, to prefer a petition in writing, praying to be permitted to swear and examine witnesses upon the same, for the publishing or confirming thereof; and, thereupon, all such persons as would have been entitled to distribution of the estate, if the deceased had died intestate, shall be summoned to answer the petition, in like manner as is provided for the summons of parties to civil actions in the Courts of Common Pleas; whereupon *he* [the Judge of Probate] shall, after swearing all the subscribing witnesses to the same, proceed to examine severally, and to take down

in writing such depositions of other witnesses as are made
for or against the confirmation of the will, upon all matters
touching its legal validity, or formal execution; and, in case
the proof be sufficient, *he* shall, by *his* decree, pronounce for
the validity of the will."

The notice required of the contestants was given; the
Judge of Probate extended it to the proponents of the will,
the executor and executrix, who filed the petition provided
for in the statute; the Judge of Probate then issued a sum-
mons requiring the respondents named in the petition to
make answer thereto, and had the same duly served upon the
respondents; a day was set for the hearing of testimony *pro*
and *con* the confirmation of the will; the proponents and the
contestants and their attorneys met in the Probate Court.
Then a departure from the statutory procedure occurred—
not an unnatural one, in view of the declaration of the Court
in the case of *Myers v. O'Hanlon,* 12 Rich. Eq., 203:

"In truth, the validity of contested wills is tried and de-
termined practically in the Court of Common Pleas. The
primary decree of the ordinary in such controversies is re-
garded by the parties as comparatively immaterial. It is
upon the appeal to the law Courts that the actual contest, the
substantial trial, really occurs."

The attitude of the counsel manifestly was, why go
through the tedium of a trial in the Probate Court when,
however decided, the case must be fought over in the Com-
mon Pleas Court? As we remarked, not an unnatural con-
clusion; but the question is, however convenient: Did that
invest the Common Pleas Court with jurisdiction?

Article 5, § 19, of the Constitution, provides:

"The jurisdiction in all matters testamentary and of ad-
ministration    *   *   *    *shall be vested* as the General As-
sembly may provide."

Section 168, Code Civ. Proc., 1922, provides:

"The probate of the will and the granting of administra-
tion of the estate of any person deceased *shall belong to the*

*Judge of Probate* for the County in which such person was last an inhabitant.  *  *  * "

Section 5351, Vol. 3, Code, 1922, prescribes, as we have seen, a specific course to pursue in the probate of wills, both in common form and in due form of law; and as to proof in due form of law, the course is outlined with particular detail.  *The duties in respect to both forms of probate, are devolved upon the Judge of Probate.*  As to proof in common form, that too is outlined, and it is provided that that form of proof "shall be good," unless proof in due form is demanded and consummated in the manner therein prescribed.

In *Ex parte Lewie,* 17 S. C., 153, it is held:

"The Court of Common Pleas is the general fountain of justice, and where the rights of a citizen, either derived from the common law or the statutes, are invaded *and the power to protect is conferred upon no special jurisdiction,* he may seek redress in that Court.  But where rights are created by statute, to be obtained and protected in a special manner specified in the act by a special tribunal, no other Court can assume jurisdiction.  *On the contrary, parties interested must pursue the course prescribed, and must seek the aid of the tribunal upon which the power to grant or protect has been conferred."*

In the case of *Myers v. Ham,* 20 S. C., 522, it is said:

"Under the statutes upon the subject of *homestead,* the Circuit Court is without original jurisdiction therein.  Such jurisdiction has not been conferred upon this Court either on its law or equity side.  The act of force in reference to homesteads prescribes the mode of obtaining it in clear and distinct terms, and provides the necessary machinery to that end, suited to all cases where the right has attached,  *  *  * where a right is provided by statute, to be enforced in a prescribed mode, no other can be resorted to"—citing the *Lewie* case.

In *Jennings v. Abbeville County,* 24 S. C., 543, it was held that under the Constitution of 1868 (the decision was in 1885, prior to the Constitution of 1895) and the laws passed since, the Board of County Commissioners have exclusive jurisdiction to audit and provide payment for county claims, subject to the right of appeal, and that therefore no action can be instituted against the County in the Court of Common Pleas.

In view of the provision for appeal from the Probate Court to the Court of Common Pleas upon the issue of "will or no will," the following extract from the *Jennings case* is exceedingly apposite:

"It is, however, further said, that the Court of Common Pleas is a Court of general jurisdiction, and as such has jurisdiction of all matters not given exclusively to an inferior tribunal or expressly forbidden to that Court. The principle contended for may be correct, but, as we think, does not apply to this case. Jurisdiction is expressly given to the Board of County Commissioners, but not to the Court of Common Pleas, without, however, any express negation. Under some circumstances, this might give the Court of Common Pleas concurrent jurisdiction; but in this case we think it does not. First, the same instrument (Constitution) defines the powers and duties of both, giving original jurisdiction to the Board of County Commissioners *with only the right of appeal to the Court of Common Pleas;* * * * and in such cases the powers given and the mode and manner of their exercise are in their nature exclusive"— citing the *Lewie case* and others.

In *Moore v. Barry,* 30 S. C., 530; 9 S. E., 589; 4 L. R. A., 294, the Court said:

"When a statute creates a new right, and at the same time prescribes a special proceeding for enforcing the right, that course must be followed by any one claiming that right."

See, also, *Ex parte Brown,* 37 S. C., 181; 15 S. E., 926.

In *Meier v. Kornahrens,* 113 S. C., 270; 102 S. E., 285, the Court, in discussing what is now Section 5351, Vol. 3, Code, 1922, says:

"But this not an equity case, nor does the appeal involve issues of fact arising out of a case of an equitable nature * * * [citing cases]. *It is rather in the nature of a special proceeding under a statute.*"

Section 187, Code Civ. Proc., 1922, provides for an appeal from the Probate Court to the Court of Common Pleas, involving the correctness of any "final order, sentence or decree" of the Probate Court. It has been held in numerous cases that this section gives the losing party in a proceeding before the Probate Court, under the second subdivision of Section 5351, Vol. 3, Code of 1922, the right to appeal to the Court of Common Pleas and there have the issue tried *de novo.*

In the case of *Myers v. O'Hanlon,* 12 Rich. Eq., 204, cited with approval in the case of *In re Solomons' Estate,* 74 S. C., 189; 54 S. E., 207, it is said:

"In legal construction, the Court of Common Pleas has but appellate jurisdiction in such cases."

The same section of the Code, Section 168, Code Civ. Proc., 1922, which confers upon the Court of Probate, or the Probate Judge, as it is stated, the Probate of Wills, confers upon that Court or officer the granting of letters of administration. If the Court of Common Pleas has concurrent jurisdiction with the Probate Court in the one case, it has it in the other. We do not apprehend that it would be contended that the Court of Common Pleas had jurisdiction to grant letters of administration.

We are not called upon to explain or justify the legislation which apparently imposes the inconvenience of trying the same issue twice. There may have been good reasons for such legislation, or there may not; with that we are not concerned. It is sufficient to say that *ita scripta est.* It may be suggested that, in view of the fact that in a large proportion

of the cases involving the issue, the parties become satisfied with the finding of the Probate Court, such preliminary investigation and finding are in the interest of the desired speedy administration of estates; or that the issue may be only one of law, the other questions being settled or conceded before the Probate Court, which can be quickly settled upon appeal.

So that we find: (1) That the Court of Probate is vested with jurisdiction to try such an issue; (2) that the Court of Common Pleas has not been vested with such jurisdiction; (3) that the Court of Common Pleas has been vested with only appellate jurisdiction to review the judgment of the Probate Court upon such an issue; (4) that the Probate Court has rendered no judgment in the matter from which an appeal could be taken.

It "follows as the night the day" that the Court of Common Pleas was without jurisdiction to entertain the issue of "will or no will" in this case.

As to the matter of the Statute of limitations barring the action which has been instituted: If, as we have concluded, the Court of Common Pleas was without jurisdiction to render the judgment of "no will" in May, 1914, the judgment is void. The effect of a void judgment is thus expressed by Mr. Freeman in his work on Judgments (4th Ed.), § 117:

"A void judgment is, in legal effect, no judgment. By it no rights can be obtained. Being worthless in itself, all proceedings founded upon it are equally worthless. It neither binds nor bars any one. All acts performed under it and all claims flowing out of it are void. The parties attempting to enforce it may be responsible as trespassers. The purchaser at a sale by virtue of its authority finds himself without title and without redress. The first and most material inquiry in relation to a judgment or decree then is in reference to its validity. For if it be null, no action upon the part of a plaintiff, *no inaction upon the part of a defend-*

*ant, no resulting equity in the hands of third persons,* no power residing in any legislative or other department of the government, can invest it with any of the elements of power or of vitality. It does not terminate or discontinue the action in which it is entered, nor merge the cause of action; and it therefore cannot prevent the plaintiff from proceeding to obtain a valid judgment upon the same cause, either in the action in which the void judgment was entered or in some other action."

"Where a judgment is void upon its face, it may be vacated upon proper application regardless of what length of time has interposed since its entry." 15 R. C. L., 692.

"But when the application is not made under the statute, but invokes the inherent power of the Court, the statutory limitation is generally decreed not applicable, and the power to vacate in proper cases is not lost by mere lapse of time or the expiration of the term. Within such rule fall cases where the judgment is vacated because it is void for want of jurisdiction." 34 C. J., 256.

"The power of the Court to vacate a judgment which appears to be void upon an inspection of the judgment roll is inherent. It does not expire by lapse of time." *People v. Creene,* 74 Cal., 400; 16 P., 197; 5 Am. St. Rep., 448

"If a judgment is void for want of jurisdiction over the parties or the subject-matter, there is no doubt that it may be vacated upon motion, no matter what length of time has interposed since its entry * * * [citing cases]. Under these circumstances, that which purports to be a judgment is not such in fact or in law." Note 60 Am. St. Rep., 642.

"Code Civil Proc. N. Y., § 724, limiting the time within which application should be made for relief from a decree taken through 'mistake, inadvertence, surprise, or excusable neglect,' does not apply to a decree which the Court had no power to make. In such case there is no limitation." *In re Underhill* (Sur.), 9 N. Y. S., 457.

"A judgment void for want of jurisdiction over defendant's person may be vacated irrespective of the lapse of time." *Lushington v. Seattle Auto & Driving Club,* 60 Wash., 546; 111 P., 785.

"It is universally conceded that a judgment void for want of jurisdiction over the person of the defendant may be vacated on motion, irrespective of the lapse of time." *Dane v. Daniel,* 28 Wash., 155; 68 P., 446.

A *fortiori,* where the Court is without jurisdiction to entertain the issue.

It has been suggested that the attack upon the judgment of May, 1914, is a collateral attack, and should have been made by motion in the proceeding in which it was rendered. This rule applies to judgments *voidable;* it does not apply to judgments *void* upon the face of the record. "In every proceeding of a judicial nature there are one or more facts which are strictly jurisdictional, the existence of which is necessary to the validity of the proceedings, and it is a fundamental rule that a judgment or decree which the Court has no jurisdiction to pronounce is void. It is, in legal effect, no judgment, and has no force either by way of evidence or *estoppel,* but leaves the parties litigant in the same position they were in before the trial. Unless jurisdiction exists, the judgment is not due process of law and is ineffectual for any purpose. No rights are in any way affected by it, and from it no rights can be derived, and all proceedings founded thereon are invalid. A decision of a Court not having jurisdiction, being thus *ipso facto* void, may be attacked in any proceeding, direct or collateral, in which a person seeks to assert a right under such pretended adjudication." 15 R. C. L., 841.