### 19453

In re ESTATE of L. Arthur O'NEILL, Jr., TUOMEY HOSPITAL, and John D. Lee, Jr., Administrator, C. T. A. of The Estate of L. Arthur O'Neill, Jr., Respondents, v. Vernon Wulbern TOBIAS et al., Appellants.

(190 S. E. (2d) 754)

56

*Messrs. John B. Thomas* and *Marvin H. Wolper,* of Charleston, and *Levi & Wittenberg,* of Sumter, *for Appellants,*

*Messrs. Schwartz & Schwartz,* of Sumter, *for Respondents,*

*Messrs. John B. Thomas* and *Marvin H. Wolper,* of Charleston, *for Appellants, in Reply,* 

July 17, 1972.

LEWIS, Justice.

This appeal arises out of a contest over the probate of the will of L. Arthur O'Neill, Jr., deceased. We held in a prior appeal that Sumter County, South Carolina, was the proper jurisdiction for the administration of his estate. *O'Neill's Estate v. Tuomey Hospital,* 254 S. C. 578, 176 S. E. (2d) 527.

The testator died on May 25, 1968, leaving a will dated September 27, 1917, under which his estate of approximately one million dollars was left largely for charitable purposes. The will was executed shortly before his entry into active duty in the United States Navy on October 29, 1917. During his military service, he became mentally incapacitated and was discharged in January 1919. He remained mentally incompetent until his death.

Proceedings were instituted in the Probate Court for Sumter County for the administration of testator's estate, and his will was admitted to probate in common form. Appellants (first cousins and the sole heirs-at-law of deceased if he had died intestate) challenged the validity of the will and requested that it be proved in solemn form. The will was subsequently adjudged valid and admitted to pro-

bate in solemn form by the probate court, after a full evidentiary hearing.

At the hearing before the probate court, it developed that all witnesses to the will had died and testimony as to the genuineness of their signatures was offered. Such testimony was introduced as to the signatures of two of the witnesses. The genuineness of the signature of the third witness, one Lila Brown, was sought to be shown by the deposition of a third party who was familiar with her handwriting. Objection was interposed to the admission of the deposition upon several grounds. When the objection was interposed, the probate judge reserved his decision as to its admissibility and later, in his written order, found that the will should be admitted to probate in solemn form, "without ruling on the admissibility of this deposition"or considering it in reaching his decision.

It is apparently conceded that, aside from the challenged deposition, there was no testimony before the probate court as to the genuineness of the signature of one of the subscribing witnesses, leaving a failure of proof as to the due execution of the will, since proof of the signatures of three witnesses is required. *Hopkins v. Albertson,* 2 S. C. L. (2 Bay) 484.

Appellants filed a timely appeal to the court of common pleas from the foregoing decision of the probate court. The notice of appeal set forth the grounds upon which it was based and contained a request that all factual issues relating to the validity of the will be submitted to a jury for determination, with a statement of the factual issues to be submitted. Included was the ground that the proponents of the will had failed to prove its due execution by each of the alleged subscribing witnesses.

It is well settled in this State that, upon appeal from the probate court, as here, on a question of will or no will, issues of fact are tried *de novo* in the circuit court. *Muldrow v. Jeffords,* 144 S. C. 509, 142 S. E. 602.

Upon the call of the case in the court of common pleas, appellants took the position that the action of the probate court in upholding the validity of the will, when there was a failure of proof as to the due execution thereof, constituted an error of law which the court of common pleas was required to determine on the record before the probate court and was not a factual issue for *de novo* determination in the court of common pleas. Appellants contended the trial judge could only correct the alleged error of law by reversing the probate court and ordering that the will be denied probate. The trial judge overruled this contention and submitted the question of the due execution of the will, along with other factual issues, to the jury for determination.

The first question for determination is whether the trial judge erred in ruling that questions relative to the execution of the will constituted factual issues for trial *de novo* in the court of common pleas, even though the testimony thereabout was undisputed before the probate court. The decision in *Briggs v. Caldwell*, 93 S. C. 268, 76 S. E. 616 sustains the ruling of the trial judge and is dispositive of the question here raised. See also *Johnson v. Johnson*, 160 S. C. 158, 158 S. E. 264.

In Briggs, as here, the contention was made on appeal to the circuit court that, since the testimony before the probate court conclusively showed that the will was not properly executed, only a question of law was presented for determination by the court without a jury. The circuit judge overruled the contention and directed that the factual issue as to execution be tried *de novo* in the court of common pleas. Upon appeal to this Court, the ruling of the circuit judge was affirmed. The court there pointed out that, upon appeal from the probate court on a question of will or no will, issues of fact are tried *de novo* in the circuit court; and that "the evidence, therefore, taken in the probate court cannot determine whether the questions to be determined in the circuit court will be questions of law or fact."

When an appeal is taken from a decision of the probate court on the issue of will or no will, the cause is transferred to the circuit court for a trial *de novo* of the factual issues, as though it were an original cause in that court. The appeal is in reality a special proceeding under the statute which affords the parties the right to a trial by jury in the circuit court, if properly claimed. *Meier v. Kornahrens,* 113 S. C. 270, 102 S. E. 285.

In the trial *de novo* of factual issues in the circuit court, "controversies as to the rulings of the probate judge upon the admission of evidence, preponderance of the evidence, or matters of law or procedure, vanish from the case." *Muldrow v. Jeffords, supra.* And the fact that the decision of the probate judge, on the issue of will or no will, is without evidentiary support cannot affect the right of the parties, timely and properly asserted, to a jury trial of the material factual issues in the circuit court.

The contention of appellants that the trial judge erred in submitting the issue of the execution of the will to the jury for determination, along with the other factual issues, is without merit.

Appellants next contend that the trial judge should have granted their motion for a directed verdict because of the alleged failure of respondents to prove that the testator knew or had knowledge of the contents of the will. Error is also charged in the failure of the court to submit to the jury a specific inquiry as to whether testator had such knowledge.

In the trial of the case *de novo* in the circuit court, the trial judge submitted six questions to the jury for determination. These questions and the answers of the jury were as follows:

(1) Was the document purporting to be the last will and testament of L. Arthur O'Neill, Jr., in fact signed by him? Answer—Yes.

(2) Was the document signed by each of the three witnesses, Lila Brown, Bertha Bultman and W. I. Whitehead? Answer—Yes.

(3) Was the purported will legally signed and attested? Answer—Yes.

(4) Did L. Arthur O'Neill, Jr., have mental capacity to make his will September 27, 1917? Answer—Yes.

(5) Was the purported will the result of undue influence? Answer—No.

(6) Is the document the last will and testament of L. Arthur O'Neill, Jr.? Answer—Yes.

In addition to the foregoing, appellants requested that the court have the jury answer a specific question as to whether the testator knew or had knowledge of the contents of the purported will. This request was refused. The court did, however, clearly instruct the jury relative to the necessity of proving the testator's knowledge of the contents of the will and the legal principles governing such proof, in accordance with the following statement of the rule in *Ex Parte McKie*, 107 S. C. 57, 91 S. E. 978:

"It is true that ordinarily the proof of a paper writing, signed and witnessed according to the statute, and purporting to be a will, entitles it to be regarded as such. And it will be then presumed, as matter of fact, that the testator knew the contents of the paper. The contestant must show the contrary. *Kaufman v. Kaufman*, 49 S. C. 159, 27 S. E. 16, 61 Am. St. Rep. 808; *Mordecai v. Canty*, 86 S. C. [470] 476, 68 S. E. 1049. While therefore the proponent of a paper purporting to be a will must of course prove that the testator knew its contents, yet that is sufficiently done, in the first instance, when the paper is presented and its execution is in due form of law. See Nott, J., *Warley v. Warley*, cited in [46 S. C. L.] 12 Rich. 249.

"On the other hand, if all the circumstances which surround the transaction, and, as disclosed by the testimony, cast doubt upon whether a testator did know what was in the will, then there ought to be some proof, apart from the mere execution of the instrument, that the testator knew its

contents; and the jury then must judge if the testator did have knowledge of its contents."

The jury found in this case that the will in question was freely and properly executed by a testator of sound mind. The sufficiency of the evidence to sustain these findings is not questioned in this appeal.

The testimony shows that the testator entered the U. S. Navy in October 1917, approximately one month after the execution of his will; and that approximately four months thereafter he was commissioned an ensign. His Officer's Fitness Reports indicate that he had all of the qualifications of an excellent officer until about May 1918, at which time he became mentally incompetent and remained so until his death. He was diagnosed as suffering from *dementia praecox, hebephrenic* type. While there is some mention in his Navy service records to a "predisposition" of this condition, there was no direct testimony which reflected adversely upon testator's mental capacity at or near the time of the execution of the will.

Therefore, upon proof of the due execution of the will by a competent testator, a presumption arose that he knew the contents of the instrument, which cast the burden upon appellants (the contestants) to prove lack of knowledge of the testator of the contents thereof. Admittedly there was no direct testimony presented by either party on this issue. Respondents, as the proponents of the will, relied upon the foregoing presumption which, in the absence of other proof, was sufficient to establish the fact of knowledge of the contents of the will. *Ex Parte McKie, supra;* 57 Am. Jur., Wills, Section 861. At page 573 of the cited text, the applicable rule is succinctly stated as follows:

"If no further showing is made than that the will was executed by a capable testator, the proponent has succeeded in establishing the essential fact of knowledge of contents."

Appellants contend however that they were entitled to have a separate question answered by the jury as to whether the testator knew the contents of the will.

This position evidently proceeds upon the theory that knowledge of the contents of the will constitutes an element of a will separate and apart from testamentary intent. As stated in Page on Wills, Section 5.8, "it would be more accurate to define the effect of the presence or absence of knowledge of the contents in terms of its evidentiary effect as one of the several factors bearing on the presence or absence of the required element of intent." The jury found in answer to the sixth question submitted that the document in question was the last will and testament of the testator. This answer, under the court's instructions, necessarily embraced a finding that the testator knew the contents of the will. Therefore no prejudice could have resulted from the failure to submit this as a separate question.

Exception has also been filed to the refusal of the trial judge to give the following instruction to the jury on the question of insanity:

"I further charge you that the heirs are entitled by law to present evidence of O'Neill's mental condition either before or after the alleged execution of the document so that you can consider and weigh that evidence by taking into consideration the nature and extent of his mental illness or condition, whether temporary or permanent or chronic. For proof of insanity may justify a finding of insanity at a prior date where the condition must have existed for some time as where the disease is progressive and has arrived at an advance stage."

Appellants contend that they were entitled to have the foregoing instruction given so that the jury would know that they could consider testimony as to the mental condition of the testator both prior and subsequent to the execution of the will in determining whether he had sufficient mental capacity at the moment of its execution.

Instead of the requested instruction, the trial judge charged the jury as follows:

"One who relies on insanity proven at another time to invalidate a will has the burden of proving by the preponder-

ance of the evidence that at the moment of executing the will, the testator did not have the mental capacity to do so. And even if a testator had been previously adjudged *non compos mentis*, yet that would not be conclusive that he was insane at the time of the execution of the will unless the character of his insanity was a permanent or chronic nature, which latter fact must be established by contestants by the preponderance of the evidence."

The instruction as given amply covered appellant's request, especially when taken in connection with the remainder of the charge which contained a full and clear statement of the law applicable to the issue of insanity. Since the principle was adequately covered in the main charge, no prejudice could have resulted from the refusal to give the instruction in the language requested by appellant.

Finally, appellants contend that the trial judge erred in refusing to excuse for cause (1) jurors who were related to employees of Tuomey Hospital, a beneficiary under the will and a party to the action; and (2) a juror who was a first cousin of the law partner of the administrator, C. T. A.

Persons related to employees of Tuomey Hospital, or the law partner of the administrator, C. T. A., were not disqualified to serve as jurors as a matter of law. Whether or not they were permitted to serve rested within the sound discretion of the trial judge. *Smith v. Quattlebaum,* 223 S. C. 384, 76 S. E. (2d) 154; *State v. Nicholson,* 221 S. C. 399, 70 S. E. (2d) 632; *Nicholson Investment Co. v. Glymph,* 148 S. C. 226, 145 S. E. 789.

At the beginning of the trial, all jurors indicated, upon inquiry by the court, that they could give the parties a fair and impartial trial. The trial judge then ruled that the jurors in question were qualified to serve and, subsequently, under the motion for a new trial, refused to set aside the verdict because of the challenge to the qualification of the jurors in question. Questions concerning the

qualification of the jurors were addressed to the sound discretion of the trial judge. There is no showing that he abused such discretion in ruling that the jurors were qualified to serve.

All exceptions are overruled and the judgment of the lower court is affirmed.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.