15813

THOMPSON *ET AL.* v. ANDERSON *ET AL.*

(37 S. E. (2d), 581)

*Messrs. James E. Leppard,* of Chesterfield, and *Samuel Want,* of Darlington, Counsel for Appellants,

*Messrs. McDonald & McGowan,* of Florence, and *Herbert Britt,* of Dillon, Counsel for Respondents,

March 12, 1946.

MR. ASSOCIATE JUSTICE STUKES delivered the Opinion of the Court.

John G. Hays died a resident of Dillon County June 2, 1940, seized and possessed of two tracts of land aggregating about one hundred and seventy-four and one-half acres. Old, but without suggestion in the record of impairment at that time of his testamentary capacity, he went on February 27, 1935, with his aged wife to the county seat and had the Probate Judge, since also deceased, prepare his will, which was regular in form and execution and attested by three disinterested witnesses who were conveniently courthouse employees. Testator, an uneducated man, made his mark instead of signing his name.

Under the terms of the will his wife, Beedie Hays, was given a life estate in all of the real and personal property; afterward the home place of seventy-four and one-half acres was devised to testator's daughter, Daisy Miller, and the remaining land, one hundred acres, more or less, was given to his daughter, Donnie Thompson; then there was bequeathed, quoting the words of the will, "unto all the rest of my heirs, Madge Anderson, Georgia Church and Benton Hays, to be equally divided among them, all of my personal property and what monies that I have on hand at the time of my death." The daughter, Donnie Thompson, was named executrix.

After the testator's death, this will was found in the possession of the successor Probate Judge and was probated in common form on June 6, 1940; the executrix qualified and letters testamentary were issued to her on that date.

Thereafter, about August 3, 1940, another purported will, dated March 9, 1935, was procured to be probated in common form by Lacy Hays, a grandson of testator, who was named executor thereof along with Daisy Hays Miller as executrix. This purported will gave a life estate in all property to the widow, Beedie Hays, as did the earlier will first admitted to probate, with power for the use of sufficient of the personalty, to provide for the widow a comfortable living. After the death of the life tenant the property was devised and bequeathed as follows, quoting: "To Lacy Hays,

son of my deceased daughter, Naomi Hays, a one-eighth (1/8) interest. To Lloyd Miller, son of my deceased daughter, Fladger Hays Miller, a one-eighth (1/8) interest. To Katherine Robbins and James Robbins, children of my deceased daughter, Carrie Hays Robbins, a one-eighth (1/8) interest. To Daisy Hays Miller, a one-eighth (1/8) interest. To Madge Hays Anderson, a one-eighth (1/8) interest. To Georgia Hays Church, a one-eighth (1/8) interest. To Bennon (Benton) Hays a one-eighth (1/8) interest."

The latter purported will contains the names of the following as witnesses: J. B. Anderson, Benton Hays, Lacy Hays and James A. Davis. Benton Hays was the daughter of testator and her name is variously spelled in the record, "Benton", "Bennon", and "Benon", and her purported signature as a witness to her father's alleged will of March 9th is in the last stated spelling, "Benon". It is assumed and stated in the record, and uncontroverted, that the devisees and legatees in remainder, named in this purported will, were heirs at law of testator, and had he died intestate each of them would have inherited a portion of his estate.

After the probate in common form of the alleged will last referred to, Donnie Thompson, the executrix of that first probated, daughter of the testator, filed a written demand in the office of the Probate Judge that the purported will of March 9th be proved in due form of law, setting forth that her demand or petition was made in her own behalf and for the heirs at law of Daisy Miller, the other beneficiary in remainder under the terms of the will of February 27th.

Thereupon and under date of August 13, 1940, the Judge of Probate Court signed and filed a written notice directed to Lacy Hays, the executor of the purported will of March 9th, and to Lloyd Miller, Katherine Robbins, James Robbins, Carrie Hays Robbins, Madge Hays Anderson, Georgia Hays Church and Benton Hays, as devisees; in which notice the Court recited the filing of the demand or petition by Donnie Thompson and, thereafter, the following citation: "Therefore you are hereby notified and required within the

next twenty (20) days after service of this notice upon you to file your petition in writing in this Court for the proof of said will in due and solemn form of law as is required by the statute for that purpose made and provided."

Thereafter, on the 27th day of September, 1940, without the filing or service of any petition on the part of the said Lacy Hays, as the executor of the will of March 9, 1935, or by any one else, or any paper other than the said written demand or petition of said Donnie Thompson, dated August 9, 1940, without any service of said demand or petition or service of any summons or the citation upon any person, the Probate Judge commenced a hearing as if on a petition to prove said will of March 9, 1935, in solemn and due form of law, but upon agreement of counsel for both sides, and upon the return of Messrs. Tison & Miller, Attorneys, for all the caveatees, dated the .. day of October, 1940. At the beginning of the hearing, the following was written into the testimony:

"A hearing commenced this 27th day of September, 1940, held in the Judge of Probate's office; Joe P. Lane representing Mrs. Donnie Thompson, individually and as executrix, W. C. Moore representing the children of Daisy Hays Miller; Tison & Miller representing Lloyd Miller and the Robbins children, Madge Anderson, Georgia Hays Church and Benton Hays, and Robert Wienstein representing Lacy Hays, executor under the will dated March 9, 1935. Mr. Weinstein was absent from the hearing. This matter commenced before me on petition to prove will dated March 9, 1935, in solemn form, no further procedure having been filed, but will be when necessary."

During all of these proceedings Katherine Robbins and James Robbins were under the age of twenty-one; no process was served upon them and no guardian *ad litem* was appointed. Lloyd Miller became twenty-one on July 4, 1941, during the proceeding, and he was not personally served; and he was inducted into the military service in August,

1941, and James Robbins also entered the army in January, 1942.

The contest of the purported will of March 9th was conducted in the Probate Court in substantial accord with sections 8932 *et seq.* of the Code. But it is noted that the controversy was not a usual one, often described as trial of the issue of "will or no will", for ordinarily the question is whether the disputed will is effective or there is intestacy. Here the inquiry was directed to the conclusion whether the will of February 27th or that under attack, dated March 9th, should prevail. There was no attack upon the will of February 27th, that first probated, except it was contended that it was superseded by the alleged will dated March 9th. (See *Mordecai v. Canty,* 86 S. C., 470, 68 S. E., 1049.)

The trial of the issue proceeded in leisurely and deliberate fashion and there were several hearings at which many witnesses were examined. By a well-reasoned judgment the Probate Judge decided that the purported will dated March 9 was spurious and he repudiated it. The evidence which influenced him to that conclusion need not be reviewed. It was ample and is printed in full in the appeal record; the inclusion of it was resisted by appellants who then excepted to the order of the trial judge who "settled" the transcript by directing the incorporation of this testimony. It was proper that it comprise a part of the transcript for various reasons, among them that it shows the general and diligent representation of the executor and beneficiaries of the purported will under attack by the prominent members of this bar, Messrs. Tison & Miller, the participation in the trial by various of the appellants who now inconsistently contend that they are not bound because they were not formally served with process; and consideration of the record is conclusive that a fair and fully contested trial was had upon the contention of the validity of the alleged will of March 9th, both by the executor designated therein and his able counsel, all without hint of fraud or collusion. Thus it is necessary to overrule this exception of appellants. There are other exceptions re-

lating to the contents of the record which are also found to be without merit and they are, therefore, also overruled.

During the trial of the issue in the Probate Court another counsel was engaged by the proponents of the purported will of March 9th who filed a notice of appeal (Sec. 230, Code of 1942) from the judgment of the Probate Court. He was Mr. W. D. Jenerette, also a respected member of the bar, who has since withdrawn from the litigation. Likewise, Messrs. Tison & Miller served upon opposing counsel notice of appeal, in apparent care to save any rights of their former clients and at the same time they notified the latter and the Probate Court that they would no longer appear. The following is a copy of their letter of transmittal:

"Law Offices of
TISON & MILLER
BENNETTSVILLE, S. C.

"Mr. Joe P. Lane, Attorney,
Dillon, S. C.
  RE: Hays Estate.

Dear Joe:

"In order to protect the rights of our clients we enclose you herewith Notice of Intention to Appeal and send copies to the Judge of Probate and Mr. W. C. Moore.

"We have advised these people that they must make arrangements for a substitution of attorneys as we do not intend to go forward with the case, but thought it proper to serve Notice to protect their rights.

Yours very truly,

TISON & MILLER."

"RDM :L
CC Mr. W. C. Moore,
     Attorney,
       Mr. Earle Alford,
         Judge of Probate,
           Dillon, S. C."

At a subsequent stage of the proceedings, the Circuit Court asked that these counsel make a statement which they did in the form of a letter to the Court dated September 2, 1943, which is important and is reproduced in full:

"Judge E. C. Dennis,
Darlington, S. C.
.RE: Will—John G. Hayes (Dillon Co.)

"Dear Judge Dennis:

"Mr. W. C. Moore advises that you desire us to give you the facts as to the parties represented by us in the above litigation.

"In June 1940 Mrs. Georgia Church, Mrs. Madge Anderson and Miss Benon Hays consulted us in regard to the Wills of Mr. John G. Hayes, their father, and we agreed to represent them in the Probate Court. We prepared and Mr. Lacey Hayes signed petition to prove one of the Wills. We advised Mr. Hayes by letter that we had given the matter proper attention. Mr. Hayes conferred with us from time to time and we find in our files numerous letters to and from him. When we wrote the others we invariably sent him a copy of the letters. He consulted Mr. Robert Weinstein of Lumberton who wrote us on August 24th, 1940, requesting that we forward him a copy of the petition and advise him of the date of the hearing. This we did. We then communicated with Mr. Joe P. Lane for the purpose of agreeing on a date for the hearing and advised Mr. Lane that Mr. Weinstein was representing Mr. Lacey Hayes and would probably want to file a return. However, we filed the only return. Mr. Weinstein did not appear at the hearing and we advised him on October 9, 1940, what had transpired and wrote one or two letters and in one letter enclosed him a copy of the testimony. He advised us on November 18th, 1940, that he had received the correspondence and had informed Mr. Lacey Hayes that he could not represent him and suggested that he employ us, giving as his reason that it was an out of the state matter.

"Thereafter Mrs. Church asked Mr. W. D. Jenerette to become associated in the case with us and we wrote him fully sending a copy of the letter to our clients and to Mr. Lacey Hayes. On December 7, 1940, we wrote Mr. Weinstein that Mr. Jenerette was in the case with us and requested that he forward him the transcript of testimony taken. We then conferred with Mr. Lacey Hayes and the others but no definite arrangement was made, about our representing him, nor did we have any definite arrangement with the other parties.

"After conferring with us Mr. Hayes contacted several witnesses and when the date was set for a hearing we wrote him thereabout and he advised us by wire that he could not attend. We advised him it was not necessary for him to be present. This hearing was to be held in December. We wrote Mrs. Hayes, who had also communicated with us, that inasmuch as Mr. Hayes had already testified it would not be necessary for him to be present at the hearing.

"Our next communication with Mr. Hayes appears to have been on June 24, 1941, when we wrote him we would like to dispose of the matter during the summer and requested that he advise us if there had been any developments. It appears that he did not reply to this letter.

"The Judge of Probate filed a Decree and we wrote Mrs. Madge Anderson on February 29, 1942, advising that the Decree had been filed and stated in the letter that we could not represent them further and suggested a nominal fee to cover the actual expenses. A copy of this letter went forward to Mr. Hayes. We heard nothing from the parties but in order that their rights of appeal might be protected, we filed a Notice of Intention to Appeal, and signed it as attorneys for Lacey Hayes *et al.*

"During the entire period hereinbefore referred to we conferred with Mr. Lacey Hayes from time to time, advised him as to witnesses to contact, etc., and assumed that we were representing him along with the other heirs.

"We certainly have no desire to get involved in any controversy with Mr. Hayes, as to whether we represented him or not, nor do we desire to divulge any information of a confidential nature. However, we thought it proper to comply with your request and send a copy of this letter to the attorneys involved. ·

"With kind personal regards,

Very truly yours,

TISON & MILLER.

"RDM :1

· "CC Mr. Joe P. Lane, Attorney, Dillon, S. C.

Mr. J. E. Leppard, Attorney, Chesterfield, S. C."

The appeal from the decree of no will (of March 9th) of the Probate Judge was not perfected and no papers were filed in connection with said appeal other than the said notice of Messrs. Tison & Miller, and said notice of appeal of W. D. Jenerette, Esq.

On the 15th day of October, 1942, Joe P. Lane, attorney for Mrs. Donnie Thompson *et al.,* petitioners in the Court of Common Pleas, and Respondents herein, caused notice of motion to dismiss the appeal from the decree of the Probate Court to be served upon Mr. W. D. Jenerette, on the ground that the appeal had not been perfected. L. B. Haselden, attorney, accepted service of the same notice. The notice of the motion set the date for the first day of the court, October 19, 1942. On Monday, October 19th, when said motion was called, Mr. Jenerette was not present and Mr. Haselden requested time for Mr. Jenerette to appear. On October 20th, Mr. Jenerette appeared in Court and a consent order was taken that the said motion be marked "Heard", and be actually heard October 23rd at Florence in the office of the Honorable A. L. Hardee, Special Presiding Judge. All attorneys for the appellants and respondents appeared at the office of Special Judge Hardee at Florence on the 23rd of October and after the hearing the Court passed an order dismissing the appeal, which was filed on October

26th, 1942, when the Clerk of Court notified both Mr. Jenerette and Mr. Haselden of the filing of the order.

The appeal was dismissed pursuant to sec. 234 of the Code and under the cited and pertinent authority of *Fultz v. Mc-Knight,* 125 S. C., 115, 118 S. E., 37. There was no appeal hereabout to this Court.

On or about January 3, 1943, Mrs. Donnie Thompson, Executrix *et al.,* Respondents herein, commenced a proceeding in the Court of Common Pleas of Dillon County for a writ of assistance to require the Sheriff of Dillon County to eject from the farms of the late John G. Hays, deceased, Mrs. Madge Anderson, J. M. Anderson, Mrs. Georgia Hays Church, Rozella Singletary and Evans Fields.

Upon said proceeding or petition, Judge E. C. Dennis, at chambers, at Darlington, issued a rule to show cause to the said Mrs. Madge Anderson, J. M. Anderson, Mrs. Georgia Hays Church, Rozella Singletary and Evans Fields. The rule to show cause and the petition were duly served upon the said parties named on the .. day of January, 1943.

Later, upon the 19th of January, 1943, Messrs. W. E. Lynch and J. E. Leppard served upon Messrs. Joe P. Lane and W. C. Moore, attorneys for Mrs. Donnie Thompson, executrix *et al.,* a notice of a motion in the Court of Common Pleas for an order to vacate and set aside the decree of the Probate Judge and the order of the Court of Common Pleas affirming said judgment of the Probate Court and that the Court, upon the hearing of the above rule to show cause, would be requested to hear said motion.

Later the said Messrs. Leppard and Lynch served upon Messrs. Joe P. Lane and W. C. Moore, attorneys, a return to the rule to show cause for Madge Anderson, J. M. Anderson, Mrs. Georgia Hays Church, Rozella Singletary and Evans Fields, and it is also stated therein "and Mrs. Madge Anderson by and on behalf of Lloyd Miller and James Robbins." At the date of this return and at no time since had or has any one been appointed guardian *ad litem* for either Lloyd Miller or James Robbins.

It is admitted in said return that prior to the death of Mrs. John G. Hays, the life tenant under both wills, Madge Hays Anderson was a tenant of Mrs. John G. Hays, but since her death she was claiming in her own right as a tenant in common with all other devisees under the will attacked and annulled in the Probate Court.

On February 9, 1943, Messrs. Leppard and Lynch served upon Joe P. Lane and W. C. Moore a petition and motion denominated "Petition and Motion of Irene Hays Davis and others".

Mr. Joe P. Lane, attorney for petitioners in said action, and respondents herein, served two replies, one on or about January 27th, and the other on or about March 10, 1943.

On March 20th the rule to show cause came up for hearing before Judge Dennis. At this hearing, at the instance of Messrs. Leppard and Lynch, the Court ruled that he would hear all matters, including the motion of Messrs. Leppard and Lynch for new trial. After the hearing the attorney for respondents herein raised the question that no minors were properly before the Court. Judge Dennis then granted to Messrs. Leppard and Lynch time within which to properly bring minors before the Court by guardian *ad litem* duly appointed. Later Judge Dennis, at the instance of Messrs. Leppard and Lynch, issued a restraining order directing that no other proceedings be instituted by the parties until the further order of the Court.

The case was set for hearing again before Judge Dennis upon the 28th day of July, 1943. The case was then again fully argued by counsel on both sides. At the hearing Messrs. Leppard and Lynch took the position that the Executor Lacy Hays was not represented by counsel and Judge Dennis asked that Messrs. Tison & Miller write him concerning this matter and the letter was written to Judge Dennis by Messrs. Tison & Miller which is set out above. Thereafter, and on or about the 31st day of December, 1943, Judge Dennis granted a decree in which the return of the appellants to the rule to show cause of Donnie Thompson *et al.*, the mo-

tion of Katherine Robbins, James Robbins, Lloyd Miller and Irene Hays Davis to open the judgment in the Court of Probate and the Court of Common Pleas were dismissed, the order of Judge Dennis dated March 20th, 1943, was vacated and dissolved and a writ of assistance granted to Mrs. Donnie Thompson and her co-petitioners.

On the same day a writ of assistance was issued against the appellants, J. M. Anderson, Madge Anderson, Georgia Hays Church, Rozella Singletary and Evans Fields requiring the sheriff of Dillon County to eject them from the possession of the particular lands described in said order or writ and to place said Donnie Thompson and the other devisees under the will of John G. Hays dated February 27th, 1935, in possession of the lands.

The foregoing tedious, but necessary, statement of facts is largely derived from the "Statement" in the transcript of record for appeal.

The decree of Judge Dennis, dated December 31, 1943, from which, and the accompanying writ of assistance, the appeal comes to this Court, is an interesting one. Its major premise is that privity existed between the designated executor of the purported will of March 9 and the beneficiaries of it, so that jurisdiction of him in his official capacity gave jurisdiction of them and there was no necessity for service upon them of process of the Probate Court in order to give the latter full jurisdiction of the will contest. In addition, several of the beneficiaries of the spurious will attended the trial, actively participated and testified. Actually the executor, Lacy, and all of the other devisees except the Robbins' and Lloyd Miller testified in support of "their" will. (The record shows nothing of the minority or absence in military service of any of them.) Surely as to them, they are estopped. "A voluntary appearance of a defendant is equivalent to personal service of the summons upon him." Sec. 441, Code of 1942.

It was found to be of further importance that all of the beneficiaries of the will under attack would have been heirs

at law of the decedent had he died intestate and were represented by the designated executor, with whom they were in privity, and he in turn was represented by competent counsel. In the prescribed procedure for the attack of a will in the Probate Court, Code sec. 8932 provides that process must be served upon those who would be entitled to inherit if the deceased had died intestate. But that is not applicable in this case for the contestees were the beneficiaries of the other will, that first admitted to probate. Thus the important distinction between these proceedings and those in an ordinary will contest is seen. The statutes contemplate heirs at law and distributees as adversaries of the proponents of a will subjected to proof in due form of law. It was not so in this case; the adversaries were the respective beneficiaries of the two conflicting and competing wills. Those who would have taken by the will of March 9th were, as has been said, in privity with the designated executor of that will and he had his counsel who were thereby their counsel, and it matters not that some of them were minors without guardians *ad litem* and similarly with respect to those who went into military service during the pendency of the proceedings.

That was, in effect, decided by this Court in the leading case of *Muldrow v. Jeffords,* 144 S. C., 509, 142 S. E., 602. (It is interesting to note that the appeal in that case was from a decree of the same distinguished Circuit Judge, recently retired after long and successful service, from whose judgment the appeal was taken in the instant case.) The plaintiff (appellant) there was the grandson of the testator and the devisee in remainder under a will which was declared "no will" in a contest such as this. He was less than fourteen years old when the judgment of "no will" was entered. One of the grounds upon which he sought to afterward re-open the judgment was his minority and the alleged fact that no summons in the prior proceeding was served upon him. This Court pointed out, in affirming the circuit judgment of Judge Dennis, that the statute does not require the service of a summons in an action in attack upon

a will upon the devisees thereof, but only upon "such persons as would have been entitled to distribution of the estate, if the deceased had died intestate." Granting the fact that there was no service upon the minor devisee in that case, it was adjudged immaterial, although the result of the action was the destruction of his devise under the will which was declared "no will".

In the case before us, the devisees in the voided will were potential heirs and distributees, as has been said, but they were proponents of the alleged will, and not defendants in the proceeding. Hence the latter was not against them as heirs and distributees; on the contrary, they were actors in the litigation, undertaking to establish the will, and were undoubtedly represented by the named executor, who procured counsel and proceeded in their behalf. Therefore, they would have been in the anomalous position of a plaintiff serving himself with his own-inspired process in order to bring himself within the jurisdiction of the court, were appellants' theory tenable. The law, of course, does not require so useless a thing as self-service of process upon an actor in order to subject him to the jurisdiction of the court. He has already voluntarily so subjected himself.

The appellants, who are the devisees and heirs thereof (and alleged tenants and croppers of one of them) under the will of March 9, 1935 (declared "no will" by the judgment of the Probate Court of Feb. 23, 1942, appeal therefrom dismissed by the Court of Common Pleas Oct. 23, 1942), can, and do, except only to the decree of Judge Dennis of Dec. 31, 1943, as has been indicated; but they have maneuvered into supposed firing position against the judgment of the Probate Court of February, 1942, from which appeal was dismissed by Special Judge Hardee after motion, notice and arguments on October 23, 1942 (from which no appeal was taken), by their motion to re-open on three alleged grounds:

(1) The probate court proceedings were fatally defective in the particulars stated in the foregoing narrative;

(2) Some of the devisees named in the will held "no will" were minors without guardians *ad litem*; and

(3) Some were drawn into the military service pending the proceedings and the "Soldiers' and Sailors' Civil Relief Act of 1940" of Congress (50 U. S. C. A. Secs. 510 *et seq.*, 130 A. L. R., 794, reprinted with amendments and a useful index in 147 A. L. R., 1395 *et seq.*) was not complied with.

(This sufficiently summarizes the burden of the appeal but there is another phase which will be discussed later.)

Considerable has already been said in denial of the propriety of points (1) and (2) above. There was substantial compliance with the applicable statutes to give the Probate Court jurisdiction of the contest of the alleged will of March 9th, regardless of the minority of several of the beneficiaries. *Muldrow v. Jeffords, supra.* They were represented by the named executor of their will and were thereby made parties, in the nature of plaintiffs; and no prejudice has been shown in the adjudication of the rights claimed in their behalf.

The case is a contest between the devisees under two wills. Nowhere does anyone make any claim as an heir at law of the testator. Certain of the appellants are claiming under the second will in which they were devisees. Section 8932 (3) of the Code directs that those who would be heirs if the deceased had died intestate be brought before the court. The purpose of this is clear, that is, to prevent successive contests by various heirs to set aside a will. The statute does not require the devisees under the will being attacked to be served. On the contrary, it recognizes that the one offering the will for probate (the executor) represents all persons taking under the will. This is made plain by placing the duty of serving the heirs upon him (the executor) who is offering the will for probate. The statute makes the proponents of the will, in effect, plaintiffs and they are represented by the executor. As devisees, these appellants are bound by the decision of the Probate Court. Since they could not take as heirs, regardless of the outcome, and since they

properly make no claim as heirs, the statute affords them no reason to complain.

The rule is based upon the consideration that the probate of a will is a proceeding *in rem*. It is succinctly stated in 28 R. C. L., 376, 377, as follows:

"The executor in seeking to propound a will is in privity with the legatees claiming under the instrument, and a decree denying probate will be binding against them, even though they were, at the time of the decree, laboring under such disabilities as coverture, or infancy, or even if at that time they were not yet *in esse*. In effect all persons claiming under a will which has been offered for probate and rejected are bound by the decree refusing to admit the instrument to probate. Not only the parties but all other persons are, in the absence of statute, precluded from repropounding the will for probate."

Further reason and authority is found in the note in 15 Ann. Cas., 68, 69, from which the following is taken:

"The weight of authority is to the effect that a decree of a Probate or Surrogate's Court refusing to admit a will to probate is conclusive of its invalidity in all collateral proceedings, with respect to real as well as personal property. (Citing cases.)

"In Tibbatts v. Berry, ·10 B. Mon. (Ky.), 473, it was said: 'The probate or rejection of a will by the proper tribunal having the case regularly before it is like a sentence *in rem*, conclusive, while it remains in force, in the same and in all other courts, and between all persons, whether formal parties to the record or not.'

"As has been stated, the majority of jurisdictions make no distinction, as regards the conclusiveness of a decree refusing the admission of a will to probate, between wills of personalty and wills of real estate . . .

"Where an instrument purporting to be a will is propounded for probate by an authorized person, and there is a decree of the probate court, fairly obtained and pronounced on the merits, excluding the paper from probate, such de-

cree is conclusive of the right of the parties represented in the proceeding to repropound the will for probate. (Citing cases) . . .

"It has been held that until a decree, obtained without fraud or collusion, refusing to admit a will to probate is reversed on appeal or error, not only the parties to the proceeding but all other persons are, in the absence of statute, precluded from repropounding the will for probate. (Citing cases.)

"In *Schultz v. Schultz,* 10 Gratt. (Va.), 358, 60 Am. Dec., 335, the court, after holding that the refusal to admit a will to probate was conclusive as to those who were not parties to the record, said: 'The propounder of a will, whoever he may be, whether executor, legatee, or devisee, necessarily becomes the representative of the will for the purpose of its probate and of all similarly interested, though they are not made formal parties to the proceeding and may have had no notice of its pendency; and this too whether they are *sui juris,* or laboring under infancy, coverture, or other disability. It is the policy of our law to provide promptly a representative of the estate of a decedent, and to avoid all unnecessary delays in the disposition of the estate. But when a will has been propounded by a party interested, and fairly rejected on the merits, it would defeat the policy of the law, and be productive of many mischiefs, if it could be again propounded by the same party or by others who might be interested, and the contest thus renewed from time to time. The sentence therefore against the will must be regarded as a sentence against all claiming under it.' "

There are two early cases in our reports which throw light on the subject. *Davis v. Port,* 3 Brev., 197, involved facts which arose when there was but one probate court (then called ordinary) in the state, and that in Charleston; the alleged will was of an inhabitant of Marion District. Probate of it was rejected and years later claimants, who were infants at the time of the death of the claimed testator and

not parties to (and without notice of) the proceedings in the Court of Ordinary, undertook to prove the will, asserting recently risen rights as remaindermen under the terms of the purported will. The court said in denial of claimants' contention: "An appeal might have been made within the time allowed for that purpose. This was not done; and, therefore, when the will was offered to be proved (later) in October 1812, the Ordinary acted properly in refusing to admit the same."

The other old decision in mind is *Brown v. Gibson,* 1 Nott. & McC., 326, of which a syllabus is: "It is exclusively the duty of the executor to prove the will and defend any contest about it." And it was said in the opinion, as follows: "The decree of the Court of Ordinary, revoking the probate of the will, was the judicial act of a Court possessing jurisdiction over the subject-matter of dispute; and the law holds the exercise of this right so sacred, that no evidence will be permitted to control it, in relation to the subject of dispute, so long as it remains unreversed by the order of a superior tribunal (Toller's Law of Executors, 76), and this can only be done on an appeal to the Court of Common Pleas, in the manner pointed out by the act of assembly."

Sec. 8944 of the Code plainly recognizes the representation by an executor of a beneficiary of a will who is *non sui juris.* It requires action by a guardian, committee or trustee "where such proceedings have not been instituted by some other person." What "other person" except the executor or administrator C. T. A. of the will? The statute contemplates that if there is such, and he proceeds, there need be no guardian of a minor devisee or legatee. That is this case.

There are three obvious reasons why the cited Federal Act does not apply: (1) There was no default judgment; the proceeding was vigorously contested in behalf of the proponents of the claimed will, among whom were the individuals who entered military service; (2) They were represented, through the named executor, by counsel of integrity and outstanding ability. (3) The burden of proving

that the rights of a person are materially affected by his absence in the military service is on the one claiming prejudice. *Radding v. Ninth Federal Sav. & L. Asso.* (1944), 55 F. Supp., 361. Apparently no effort was made in the lower court to meet this burden. The bare fact of induction into service of two of the many beneficiaries of the repudiated will during the proceedings is relied upon. It is manifestly not enough.

Appearances in a reorganization proceeding by bondholders having interests indentical with those of other bondholders in the armed forces were held in *Irving Trust Co. v. Fifteen Park Row Corp.* (1944), 182 Misc., 1044, 51 N. Y. Supp. (2d), 724, to render the appointment of an attorney to represent the bondholders in the military service unnecessary.

The remaining phase of the appeal relates to the writ of assistance issued by the Circuit Court to implement its judgment and give possession of the lands to the respondents pursuant to the terms of the will of Feb. 27, 1935. Others than the devisees under the invalidated will of March 9th are appellants, alleged to be tenants of such devisees and brought into the proceedings before Judge Dennis on motion of respondents in the following manner.

On January 3rd, 1943, Mrs. Donnie Thompson *et al.,* as devisees of John G. Hays by his will of Feb. 27, 1935, filed their petition in the Court of Common Pleas against J. M. Anderson, Mrs. Madge Anderson, Mrs. Georgia Hays Church and Rosella Singletary and Evans Fields. The former proceedings in the Probate Court with respect to the wills of John G. Hays were recited and the death of testator's widow, the life tenant of the lands, on August 10, 1942, and that at that time the respondents were sharecroppers of the life tenant and in possession as such; that respondents were notified to vacate which they refused. A writ of assistance was prayed.

Upon the foregoing petition the Court (Judge Dennis) issued a rule to show cause directed to the respondents re-

quiring written return. This was made and is printed in full in the appeal record (pp. 110-114) ; it has been carefully considered. Mrs. Anderson undertook to make return not only for herself but also for Lloyd Miller and James Robbins. She admitted that until the life tenant's death she was the tenant of the latter but asserted that thereupon she became the owner in cotenancy with the other devisees in remainder under the will of John G. Hays of March 9th (found spurious by the Probate Court). The return is replete with attacks upon the probate court proceedings—the minority of some of the devisees of the will repudiated, the entry into military service of other beneficiaries, and the alleged lack of personal service of process upon them. (All of these points have been examined and found to be without merit.) *No demurrer or other defenses were interposed.*

In this situation respondents' additional ground to sustain the judgment under appeal is pertinent, as follows : "None of the parties who actually made the return to the rule to show cause . . . had any right to assert or stand upon any of the matters set forth in said return." And they did not; they were precluded by the judgment of the Probate Court, appeal to the Court of Common Pleas dismissed, as we have seen.

There is nothing in the record to indicate that any matter of defense was made in the lower court to the application for the writ of assistance other than that contained in the return. Hence argument on appeal of other defenses is out of place and will not be considered.

All of the exceptions are overruled and the judgment of the Circuit Court is affirmed.

MESSRS. ASSOCIATE JUSTICES TAYLOR and OXNER and MR. ACTING ASSOCIATE JUSTICE STEVE C. GRIFFITH concur. MR. CHIEF JUSTICE BAKER did not participate.